# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JONATHAN HANKIESON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. CIV-23-244-AMG** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Jonathan Hankieson ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for disability insurance benefits ("DIB"). (Doc. 1). The Commissioner has filed the Administrative Record ("AR") (Doc. 4), and the parties have fully briefed the issues (Docs. 5, 10).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 8, 9). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I.    Procedural History

Plaintiff filed an application for DIB on August 25, 2020, alleging a disability onset date of March 31, 2018. (AR, at 59, 62). The SSA denied the application initially and on

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

reconsideration.  (*Id*. at 78, 99).  Then an administrative hearing was held on June 3, 2022.  (*Id*. at 34-58).  Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled.  (*Id*. at 13-33).  The Appeals Council subsequently denied Plaintiff's request for review.  (*Id*. at 1-7).  Thus, the ALJ's decision became the final decision of the Commissioner.  *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## II.     The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment.  20 C.F.R. § 404.1521; *see* 20 C.F.R. §§ 404.1502(a), 404.1513(a).  A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if [Claimant] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## III.    The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2018, the alleged onset date. (AR, at 18). At Step Two, the ALJ found that Plaintiff had the following severe impairments: "degenerative joint disease of

4

the knees, lumbar arthritis, bilateral pes planus and plantar fasciitis, right ulnar neuropathy, status post left shoulder arthroscopic surgery, depression, anxiety, and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c)).” (*Id*.)  At Step Three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 19).  The ALJ then determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except he is limited to jobs that do not require the use of ropes, ladders, or scaffolds.  He can occasionally climb ramps and stairs, and occasionally balance, crouch, stoop, kneel, and crawl.  He is limited to jobs that do not have exposure to dangerous machinery or moving machine parts as well as unprotected heights.  He can frequently push and pull with the bilateral upper and lower extremities.  He can frequently reach and handle with the bilateral upper extremities.  He is capable of work in goal-oriented jobs with simple, routine, and repetitive instructions not done at an assembly line or at a production quota pace.  He is limited to occasional decision making, occasional changes of workplace setting and occasional changes to workplace routine.  He can have occasional contact with supervisors, co-workers, and customers.

(*Id*. at 22).  Then, at Step Four, the ALJ concluded that Plaintiff was unable to perform any of his past relevant work.  (*Id*. at 28).  At Step Five, however, the ALJ found when “[c]onsidering the claimant’s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform” such as a housekeeper, price marker, or routing clerk.  (*Id*. at 29-30).  Thus, the ALJ found that Plaintiff had not been under a disability since March 31, 2018.  (*Id*. at 30).

IV.     **Claims Presented for Judicial Review**

On appeal, Plaintiff raises one issue, that "the ALJ's finding that [Plaintiff] is capable of the walking and standing in light work is unsupported by substantial evidence" because "the ALJ failed to engage in any meaningful analysis of the evidence which actually came well after [Plaintiff's] alleged onset date" which, Plaintiff argues, supports additional limitations. (Doc. 5, at 8). In response, the Commissioner argues that substantial evidence supports the ALJ's decision and therefore it should be affirmed. (Doc. 10).

V.      **The ALJ's Formulation of the RFC Is Supported By Substantial Evidence.**

Plaintiff argues that the ALJ "undersold the weight of the totality of the Medical Record of Evidence (MER)" and "ignored MER that supports greater limitations than the ALJ included in his RFC." (Doc. 5, at 4). Plaintiff's argument focuses only on his difficulties with standing and walking, and therefore the Court's analysis of the ALJ's decision will likewise focus on that issue.

The ALJ analyzed various pieces of evidence in making his RFC determination. (AR, at 22-28). First, the ALJ considered the testimony of Plaintiff at his hearing, that

> he uses a knee brace and foot orthotics. He said he has sharp and dull pain in both of his knees. He alleges he can stand for 15 minutes and walk for 30 minutes before needing to sit down and elevate his feet. He said he has back pain when he is stuck in one position for too long, such as sitting down or lying down. He said he uses a cream and a TENS unit for his back. He said he had medication side effects in the past, but not on his current medications.

(*Id*. at 23). However, "[a]fter careful consideration of the evidence," the ALJ went on to find that Plaintiff's "statements concerning the intensity, persistence and limiting effects"

of his symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [his] decision." (*Id.*)

In support of this conclusion, the ALJ then extensively discussed the medical evidence of Plaintiff's physical limitations in his back and lower extremities, from April 2019 through May 2022, all of which was well after Plaintiff's alleged onset date of March 31, 2018. The ALJ summarized:

> The claimant underwent a consultative medical exam in April 2019 with Robert Balogh, MD, and complained of pain in his knees with squatting, walking, and climb up or down stairs (1F/1). He said walking further than a mile or going up and down stairs made his knees "hurt like hell." He reported icing his knees. He also reported having flat feet, lumbago, and was status post left shoulder surgery (1F/1). On physical exam, he moved all extremities well and was able to pick and manipulate small objects without difficulty (1F/2). He had normal deep tendon reflexes and sensation, and his grip strength and great toe strength was 5/5 (1F/3). He moved about the exam room easily. He had adequate finger to thumb opposition, and normal fine tactile manipulation. Straight leg raising was negative. His toe and heel walking was normal. He denied back pain with axial loading and rotation. He had bilateral pes planus. His knees were stable to stressing and only minimally tender to palpation and manipulation. H[e] had a stable gait at an appropriate speed and did not use any assistive device (1F/3). He had normal range of motion of his lumbar spine except 10/25 degrees extension (1F/4). He had normal range of motion of his upper and lower extremities (1F/4-6). Dr. Balogh did not provide an opinion regarding the claimant's functioning.
>
> His treatment records at the VA show he has lumbar arthritis and arthritis of the knees and feet, and he has been prescribed Baclofen and Lidocaine patches (E.g., 4F/27, 55, 81). He also has been prescribed shoe inserts, knee braces, and a TENS unit (E.g., 4F/55, 118; 5F/13, 30). A MRI of his left knee in July 2019 showed minimal al medial patella contusion and a MRI of his left knee showed moderate chondral malacia medial facet, and mild cartilage fibrillation of the medial and lateral compartments (4F/118). In October 2020, he reported having difficulty walking when he first gets up and that he wears knee braces on both knees (4F/23). He denied any falls within the past year (4F/23). His physical exams have showed him to have pes planus, but otherwise have generally shown him to have normal gait (4F/96, 150). X-rays of his lumbar spine in April 2021 were negative except for minimal

thoracolumbar levoscoliosis (5F/31). A MRI of his lumbar spine in May 2021 was negative, showing normal disc space, and no significant bulges or nerve root compression (5F/12, 18; 6F/260). X-rays of his hands, wrists, and elbows in May 2021 were also normal except for minimal enthesopathy on the left elbow at the triceps insertion (5F/21). On physical exam in May 2021, he had slow and unsteady gait with decreased flexion and extension of his lumbar spine and bilateral knees, and sciatic pain with active range of motion (5F/35). Otherwise, he was in no acute distress, and had normal strength (5F/35). He was prescribed Diclofenac gel, Lidocaine patches, Biofreeze, and a Medrol dose Pack for his back pain, and started on Gabapentin for plantar fasciitis (5F/35).

In August 2021, he had decreased sensation to monofilament in both feet, but otherwise had normal strength, reflexes, sensation and gait, and negative Romberg sign (7F/298). He was diagnosed with neuropathy and recommended a B complex. He was also instructed to use knee braces for his arthritis and to stay away from uneven ground and use Tylenol for pain (7F/298).

In March 2022, he had no complaints of joint pain, weakness, or paresthesia (7F/105). His physical exam showed he had normal muscle strength and tone, he was in no acute distress, and his neurological exam was grossly intact (7F/106).

In May 2022, he complained of 7/10 pain in his lower back, left shoulder, bilateral knees, and bilateral feet (7F/65). He denied any weakness or paresthesia (7F/65). On physical exam, he had bilateral knee crepitus and medial joint line tenderness, and pes planus (7F/66). Otherwise, he was in no acute distress and his neurological exam was grossly intact. He was referred for shoe inserts and braces (7F/66).

(*Id*. at 23-24).  Thus, the ALJ noted the normal to mild findings in MRIs and X-rays and upon examination and conservative treatment with medication and braces, but he also observed the evidence that Plaintiff's stated symptoms to his doctors and physical examinations reflected a worsening condition at times.

The ALJ considered Plaintiff's activities of daily living, which he found to be "inconsistent with his alleged symptoms and limitations." (*Id*. at 26).  The ALJ observed that Plaintiff

> said he drives to doctor appointments, the grocery store, takes his children to school, and takes his children to their sporting events. He said he attends his children's sporting events. He said he cares for his children while his wife works and does chores such as cooking, cleaning, and giving them medication. He said he lives on about an acre of land and does yard work such as mowing with a push mower and weed eating. He said he is able to bend down while doing these chores. He said it takes him three days to do yard work. He said he is independent with his personal care.

(*Id*.)

The ALJ then considered the medical opinions of the state agency consultants regarding Plaintiff's physical limitations.  The ALJ found that the state agency consultants' opinions that Plaintiff "is capable of a light exertional capacity" to be "well supported" but only "partially persuasive," and found that "the record as a whole supports additional postural, manipulative, and environmental limitations." (*Id*. at 26).  The ALJ again discussed the medical evidence regarding Plaintiff's physical limitations and concluded:

> Therefore, the undersigned finds [Plaintiff] is further limited [to] jobs that do not require the upset of ropes, ladders, or scaffolds, and he can occasionally climb ramps and stairs, occasionally balance, crouch, stoop, kneel and crawl, and would be limited to jobs that do not require exposure to dangerous machinery, moving machine parts, or unprotected heights.  Although he has normal range of motion, sensation, and strength in his upper extremities, due to his right ulnar neuropathy, the undersigned finds he can frequently reach and handle and push and pull with the bilateral upper extremities.  Due to his pes planus, plantar fasciitis and knee arthritis, he can frequently push and pull with the bilateral lower extremities as he has had decreased sensation to monofilament in his feet, and crepitus and tenderness in his knees, but otherwise has had normal strength and reflexes in his lower extremities.  The fact he is able to do household chores, drive, and do yard work supports finding no other limitations.

(*Id*. at 27).

Finally, the ALJ took into account the August 2021 report of Plaintiff's treatment provider who "instructed the claimant to stay away from uneven ground and use knee braces." (*Id*. at 28).   The ALJ stated that he

> finds [t]his opinion partially persuasive as it was consistent with his findings of decreased sensation to monofilament in his feet and diagnoses of neuropathy and knees arthritis (7F/298). The undersigned has incorporated this opinion into the claimant's residual functional capacity by limiting him to no climbing of ladders, ropes, or scaffolds, occasionally climbing ramps and stairs, occasionally balancing, crouching, stooping, kneeling and crawling, and no exposure to dangerous machinery or moving mechanical parts or unprotected heights.

(*Id*.)

Thus, the ALJ supported his RFC limiting Plaintiff to a significantly reduced range of light work by acknowledging the medical evidence, which was somewhat mixed between normal and mild findings and more severe symptoms and examination reports; by accounting for Plaintiff's reported activities of daily living, which reflected some physical capabilities; and the opinions of state agency and other doctors, which the ALJ modified with additional limitations to accommodate Plaintiff's admitted physical limitations.  This is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S.Ct. at 1154.  Plaintiff now asks the Court to reconsider the evidence before the ALJ and reach a different conclusion.  This Court must decline that request. *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("Concluding otherwise would require us to reweigh the evidence, a task we may not perform.").  "The ALJ was entitled to resolve [] evidentiary conflicts and did so." *Id*.  Indeed,

> [t]he possibility of drawing two inconsistent conclusions from the evidence
> does not prevent an administrative agency's findings from being supported
> by substantial evidence.  We may not displace the agenc[y's] choice between
> two fairly conflicting views, even though the court would justifiably have
> made a different choice had the matter been before it *de novo*.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citations and quotation marks omitted).  The ALJ's RFC is supported by substantial evidence regarding Plaintiff's physical impairments, namely his ability to stand and walk under the definition of light work, with additional limitations.

## VI.   Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 14th day of December, 2023.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE